<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAMDOUH HUSSEIN, | |
| Plaintiff, | |
| v. | Civ. No.  09-1291 (DRD) |
| STATE OF NEW JERSEY, et. al., | **O P I N I O N** |
| Defendants. | |

*Appearances by:*

Mamdouh Hussein
P.O. Box 16470
Jersey City, NJ 07306

    *Pro se Plaintiff,*

Gebhardt & Kiefer, PC
by:  Richard P. Cushing, Esq.
1318 Route 31
P.O. Box 4001
Clinton, NJ 0889-4001

    *Attorney for Defendants, County Prosecutor and Lisa Ledoux.*

<u>**DEBEVOISE, Senior District Judge**</u>

    The present matter comes before the Court on a motion by the Hudson County

Prosecutor, Edward J. DeFazio, and Assistant Prosecutor, Lisa Ledoux (incorrectly pled as

"Ledeaux") (collectively, "County Defendants") to dismiss the Plaintiff, Mamdouh Hussein's

Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon

which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Generally,

Hussein alleges that the police, prosecutors and his landlords failed to protect him from the

superintendent of his building, Joseph Marrero, who allegedly harassed and attacked Hussein on multiple occasions, and that the County Defendants failed in various manners to properly prosecute his criminal charges against Marrero.   More specifically, the Amended Complaint alleges against all defendants 42 U.S.C. § 1983 claims for excess force and violations of the Fifth, Seventh and Fourteenth Amendments; assault and battery, negligence, and violation of Title VII of the Civil Rights Act of 1964.  Additionally, the Amended Complaint alleges claims for negligent hiring and supervision against the landlords.  Hussein is seeking compensatory damages for medical expenses, injuries and emotional distress.

The issue presented by the present motion to dismiss is whether Hussein has stated any legally cognizable claims against the County Defendants.  The County Defendants assert that they are immune from suit based on the doctrines of sovereign and prosecutorial immunity, and that, in the alternative, the Amended Complaint fails to state a claim against them on which relief may be granted.  Although it appears from the facts alleged that Hussein has suffered multiple injuries and countless indignities, the Court is unfortunately unable to grant him legal relief in this suit.  The Court will grant the County Defendants' motion to dismiss the Amended Complaint.  Additionally, because this action was instituted in forma pauperis ("IFP"), the Court will conduct a review of Hussein's claims against the remaining parties, pursuant to 28 U.S.C. § 1915(e)(2), which provides that at any time, a Court may dismiss IFP actions that fail to state a claim on which relief may be granted.  Based on the Court's § 1915(e)(2) review, the Court will dismiss all of Hussein's federal claims against the remaining defendants and decline to exercise supplemental jurisdiction over his remaining state law claims.

## I.  BACKGROUND

The Amended Complaint, filed August 5, 2009, names as defendants the State of New Jersey; Jon Corzine; Mayor J. Healy; the Jersey City Police Department; the City of Jersey City; the Municipal Prosecutor; the County Defendants; and Anita Payne, Robert Payne, and Lolita Realty Co. ("Landlord Defendants") (collectively, "Defendants").  The Amended Complaint alleges seven counts:  (1) against all Defendants for excessive force under 42 U.S.C. § 1983 (Am. Compl. ¶ 4.); (2) and (3) against all Defendants for violations of the Fifth, Seventh and Fourteenth Amendments under § 1983 (Id. ¶ 5.); (4) against all Defendants for assault and battery (Id. ¶ 6); (5) against all Defendants for negligence, gross negligence, and negligence per se (Id. ¶ 7.); (6) against the Landlord Defendants for negligent hiring and continued employment of Marrero; and (7) against all Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Hussein requests compensatory damages for medical expenses, injuries and emotional distress.  On January 26, 2010, the Court dismissed the Amended Complaint as to the State of New Jersey and Jon Corzine, based on a motion filed by them, pursuant to Fed. R. Civ. P. 12(b)(6).  The County Defendants filed the present motion to dismiss the Amended Complaint on January 14, 2010.  The Court held oral arguments on the motion on March 1, 2010.  The Court will now turn to the present motion to dismiss the Complaint, filed by the County Defendants.

It is barely possible to extract from the Amended Complaint a coherent statement of Hussein's claims.  The document itself breathes passion and sincerity, but, no doubt due to the fact that Hussein's native language is Arabic, it often verges into incomprehensibility.  It is interminable and blends facts and legal principles in an endless, argumentative potpourri.

Compounding the difficulties is the fact that the Amended Complaint incorporates by reference a 1 ½ inch thick Appendix that contains "specified information alleged facts regarding the continuation of the violation of [Hussein's] constitutional and civil rights which caused him severe injury and severe emotional distress and violation to his constitutional and civil rights with documents, specified information of the knowledge of the owners of the building, Robert and Anita Payne and the police department and the State of New Jersey". (Amended Compl. ¶ 7).

The Appendix has all manner of documents within it, e.g., Hussein's letters to city, county and State officials, Hussein's letters to judges, numerous police reports, hospital records, civil and criminal complaints.  The Hussein letters to public officials were as prolix as his complaint and those having little or no knowledge of background information would find many of them incomprehensible.

Rather than dismissing the complaint outright for failure to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," the Court searched the Amended Complaint and Appendix for the key allegations that were at the heart of Hussein's grievances.  The allegations of the Amended Complaint are, for the purpose of this motion only, accepted as true and construed in the light most favorable to Hussein.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The following emerged as what the Court deduced were Hussein's core allegations:

1.  In 2005 Lolita Realty Co. ("Lolita") was the owner of 111 Garrison Avenue, Jersey City, Hudson County, New Jersey.  Robert Payne and Anita Payne were the owners and officers of Lolita.  During the relevant time period Joseph Marrero was the Superintendent of 111 Garrison Avenue.

4

2.  In July, 2005, Hussein was the tenant of second floor apartment B5 of 111 Garrison Avenue.  On May 17, 2006, Hussein commenced a civil action against Lolita and the Paynes alleging that they negligently constructed, repaired, cleaned, serviced and maintained portions of the premises, so as to create a hazardous condition and causing severe and permanent injuries to Hussein.

3.  Commencing in 2006 Marrero continually harassed Hussein, repeatedly cutting his electric and cable wires, shutting off his electricity and verbally assaulting him. On each of these many occasions Hussein called the Jersey City Police, who responded but took no action against Marrero.[1]

4.  In addition to cutting Hussein's electrical and cable wires and turning off the basement electrical switch to apartment B5, Marrero started physically assaulting Hussein, spitting in his face and punching him.

5.  On June 24, 2006, Marrero struck Hussein with a screw driver under his heart requiring that Hussein be hospitalized.  He spent two days in the intensive care unit of the Medical Center and the hospital bill was $7,500.  On April 17, 2007, Marrero assaulted Hussein, causing broken ribs and a hospital bill of $2,500.

6.  On November 22, 2007, Marrero entered Hussein's apartment at 3:00 a.m. and opened Hussein's bedroom door and attacked him, breaking his nose and a bone in his head and causing

---

[1]  The Appendix contains more than 20 police reports reflecting calls to 111 Garrison Avenue because superintendent cut off Hussein's electricity.

lacerations to his face.  The emergency room bill was almost $5,000 and the required future three operations will cost about $50,000. [2]

    7.  No arrests were made, and the police only advised Hussein to file a complaint.  The police discriminated against him because of his status as an Arab American person of Egyptian descent.

    8.  On or about June 24, 2006, Hussein filed a criminal complaint for assault against Marrero.  He also filed with the Hudson County Prosecutor's Office information concerning the assaults against him and urged that charges against Marrero be brought before the Hudson County grand jury.

    9.  On or about September 12, 2006, Marrero, assisted by the attorney for Lolita and the Paynes filed a false criminal complaint against Hussein, alleging without any basis in fact that:

> Within the jurisdiction of this Court, the Defendant did commit an act of simple assault to wit: on 6/24/06 the Defendant did spit in the face of the Complainant and proceeded to kick him in the stomach.  The Defendant also made threats causing the Complainant to fear for his safety.

    10.  The Prosecutor of Hudson County was Edward J. DeFazio.  He delegated Hussein's case to Hudson County Assistant Prosecutor Lisa Ledoux.  Ledoux subpoenaed Hussein to appear before the grand jury in February and March, 2008.  In March, 2008, Hussein insisted that Ledoux present to the Grand Jury Marrero's history of violence, Hussein's medical evidence, the Police Department record describing Marrero's violence against Hussein on June 24, 2006, and Marrero's subsequent violent acts against Hussein.

---

[2]  The Appendix contains copies of Hospital records and of a newspaper article that describes Marrero's arrest for striking his roommate in the head with a knife during a quarrel.

11.  In violation of Hussein's constitutional rights, Ledoux failed to present this evidence to the grand jury.  Hussein was required to advocate for himself before the grand jury, which was also presented with conflicting evidence from Marrero.  Ledoux told the grand jury not to accept any evidence from Hussein that did not relate to the November 22, 2007 incident.  As a result the grand jury reduced Hussein's charges from aggravated assault to simple assault and returned the case to the Municipal Court, where it would be tried in conjunction with Marrero's case against Hussein.  Hussein decided to withdraw his charges against Marrero rather than allow the case to proceed on the lesser charge of simple assault.

12.  Numerous motions and other proceedings were held during the conduct of the case brought by Marrero against Hussein, but that case did not result in a conviction.  During these proceedings Marrero used knowingly perjured testimony of Hebel Rosario.  Marrero himself testified falsely.

13.  Rosario's mother, Rose Krops, who had lived at 111 Garrison Avenue for 12 years stated in an affidavit:

> Evaluation of my son-in-law, Hebel Rosario affidavit and my testimony in the record in the case the state attorney will describing the perjury and fraud he has been directed and asked by the super and the knowledge of both attorneys [ _____ and _____] who both asked me outside the courtroom when I appeared to testify about that fact of the breaking of the law to be or well as my son-in-law did <u>or</u> I would pay the consequences of my standing and my position of the fact that my son-in-law was not present during the incident because he was not in the building all day which the record indicates Hussein was hospitalized for two days as a result of Marrero assaulting him as well as Marrero did on a number of other occasions.
>
> Both attorneys asked me to describe falsely and testify illegally against the tenant of B5 Mamdouh Hussein who was suing by the landlord and the super and the attorney in order to evict him. . . .

14.  Rosario wrote in affidavit form to the Municipal Court Judge who tried the criminal case that Marrero brought against Hussein, apologizing for his perjury:

> As my affidavit will explain below, I ask the court to forgive me for being inexperience and the pressure I was under which lead me to give a false statement on behalf of the plaintiff Mr. Jose A. Marrero.
>
> I admitted in this affidavit under oath that all the testimony I gave to the court was false, because I wasn't present during the day of the incident as my mother-in-law Mrs. Rose Krops, testifies before the court on June 18, 2008 . . .
>
> . . . because I wasn't in the building during the incident of June 24, 2006, importantly I told her after I came back from court that I did lie under oath and I ask her to help me correct that mistake.  she advised me to go to court and correct that mistake, I was afraid to come back to court.
>
> • • •
>
> I want the court to know that Mr. Merrero (sic) asked me to lie on his behalf, explaining that there is no problem, because there is no witness on the day of the incident and as the super will cover up my false testimony of my tenancy and defendant Hussein would never know those information, including who paid the rent.
>
> • • •
>
> I want the court to know that Mr. Marrero ask me to lie on his behalf, by asking me to say Hussein have a bad attitude and that day Mr. Merrero (sic) went to his door (Hussein) to fix something and Hussein called him "son of a bitch" and spit in his face and kicked him in his stomach, this is exactly what Mr. Marrero ask me to say to the court as a tenant who witness the incident[3].

15.  On July 19, 2006, the Landlord Defendants filed a landlord-tenant case against Hussein in the Superior Court of New Jersey, Law Division, Special Civil Part, Hudson County, claiming that Hussein should be evicted because he had assaulted the Superintendent on June 24, 2006.  That case was dismissed by the landlord's attorney on August 15, 2006.  On April 4,

---

[3]  The Rose Krops affidavit and the Hebel Rosario letter-affidavit are contained in the Appendix.

2007, the Landlord Defendants filed another landlord-tenant case against Hussein, in the same court, claiming that Hussein owed a small sum of money.  That case was dismissed on March 6, 2007.

16.  Because of the actions of the Defendants, Hussein has been wrongfully deprived of any redress for the serious injuries that he has suffered over the years.

This is the essence that the Court has distilled from the mass of material that Hussein has proffered in his Amended Complaint.  With this in mind it is possible to turn to the pending motion of the County Defendants to dismiss the Amended Complaint as to them.

## II. DISCUSSION

The County Defendants claim that they are entitled to absolute immunity from suit, based on the doctrines of sovereign and prosecutorial immunity.  Additionally, they assert that they should not be considered "persons" subject to suit under § 1983, that the Title VII claim must be dismissed because the County Defendants did not employ Hussein and therefore cannot have discriminated against him in the employment context; and that Hussein's state tort claims should be dismissed because he failed to file comply with the requirements of the New Jersey Tort Claims Act.

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial

on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, the Court in Bell Atlantic held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 545.  The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying

10

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B.     Claims against the County Defendants**

The County Defendants claim that they are immune from suit in both their official and individual capacities, based on the doctrines of sovereign and prosecutorial immunity.  Based on the doctrine of sovereign immunity, states cannot be sued in federal court, unless Congress has abrogated that immunity or the State has waived it.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  Immunity also extends to state agents when the "action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to sovereign immunity from suit even though individual officials are nominal defendants." See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 431 (1997).  In Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989), the Court of Appeals recited the three factors for determining whether a defendant is indeed an "arm of the state" entitled to sovereign immunity: (1) whether the money that would pay the judgment would come from the state; (2) the status of the agency under state law; and (3) the degree of autonomy the agency has.

The Supreme Court of the State of New Jersey has ruled that the state should indemnify and/or defend prosecutorial employees for claims arising out of their law enforcement capacity in the investigation, arrest, and prosecution of a criminal defendant.  See Wright v. State, 169 N.J. 422, 455 (2001).  The Supreme Court noted that county prosecutors are considered "officers of the state" when investigating criminal activity and enforcing the law.  Id. at 450. Additionally, the Supreme Court held that "a county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all

times subject to the supervision and supersession power of the Attorney General [of the State of New Jersey]."  Id. at 451-52.

All the Fitchik factors weigh in favor of granting the County Defendants immunity; the State would pay any money judgment that would be awarded against the County Defendants, the County Defendants are considered "officers of the state," and are subject to the supervision and supersession power of the Attorney General.  Further, there is no indication here that either abrogation or waiver is applicable to Hussein's claims.  Therefore, sovereign immunity works to bar both the federal and state law claims in this suit against the County Defendants in their official capacity.  Title 28 U.S.C. § 1915(e)(2)(B)(iii) requires this Court to dismiss the claims if they "seek[] monetary relief from a defendant who is immune from such relief."  The Court will dismiss the claims against the County Defendants in their official capacities.

With regard to § 1983 claims against the County Defendants in both their official and individual capacities, the County Defendants are protected by absolute prosecutorial immunity for actions they took that were an "integral part of the judicial process."  Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses…") (citing Imbler, 424 U.S. at 409). Prosecutorial immunity is absolute and embodies the right not to stand trial.  Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008).  "[I]t is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance."  Van de Kamp v. Goldstein, 129 S. Ct. 855, 862 (2009).  A prosecutor bears the heavy burden of establishing entitlement to absolute immunity.  Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007).  In light of the Supreme Court's quite sparing recognition of absolute immunity to § 1983

liability, the Court begins with the presumption that qualified rather than absolute immunity is appropriate.  See Odd, 538 F.3d at 208-09 (citing Carter v. City of Philadelphia, 181 F.3d 339, 355 (3d Cir. 1999).

To overcome this presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the actions in question.  Id. (citing Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006)).  This inquiry focuses on the nature of the function performed; a prosecutor enjoys absolute immunity for actions performed in a judicial or quasi judicial capacity.  Guiffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (citing Imbler, 424 U.S. at 430).  Thus, immunity attaches to actions associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.  Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993).  Thus, actions taken while in court, as well as actions intimately involved in the judicial process, including deciding whether to charge a suspect, evaluating evidence, and interviewing witnesses in preparation for trial, are all activities protected by absolute immunity.  See Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992).  Accordingly, prosecutors have been granted absolute immunity from § 1983 liability for instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991), for soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings and trials, Burns v. Reed, 500 U.S. 478, 490 (1991), and for the knowing use of perjured testimony in a judicial proceedings, Imbler, 424 U.S. at 424-27.

All of the County Defendants' actions alleged by Hussein to have violated his rights fall within the category of actions taken in court, or intimately involved in judicial proceedings, including Ledoux's determination not to present certain evidence to the grand jury and her

13

alleged instruction to the jury not to accept certain evidence from Hussein.  Functionally, all of the County Defendants' actions are protected by absolute prosecutorial immunity.  Thus, all of Hussein's claims against the County Defendants in both their official and individual capacities must be dismissed.

The § 1983 claims—Counts One, Two and Three—are invalid against the County Defendants for another reason:  the County Defendants, in their official capacities, are not "persons" under § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979) ("[A] state is not a 'person' for purposes of 42 U.S.C. § 1983."); Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity…should be treated as suits against the state.").

Counts Four and Five, which allege against all defendants assault, battery, negligence, gross negligence, and negligence per se, must be dismissed because the County Defendants are immune from suit, and because Counts Four and Five find no basis in the factual allegations presented to the Court.  Moreover, the Court has no indication that Hussein complied with the notice provisions in the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8-3, which states that "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."

Finally, Count Seven, which alleges that all the defendants violated Title VII, is similarly barred based on the doctrines of sovereign and prosecutorial immunity and also fails to state a claim as to the County Defendants.  Title VII prohibits discrimination by employers against employees on the basis of race, color, religion, sex, and national origin.  It is simply inapplicable here because Hussein was not employed by the County Defendants in any capacity.

For the foregoing reasons, the Court will dismiss all claims against the County Defendants.

**C.      Claims Against the Remaining Defendants**

In light of the dismissal of the claims against the County Defendants, and the Court's previous dismissal of the claims against the State Defendants, the only remaining defendants are Mayor Healy, the Jersey City Police Department, the City of Jersey City, the Municipal Prosecutor, and the Landlord Defendants.  Because the Court finds that Hussein's federal claims against all of these remaining named parties fail to state a claim on which relief may be granted, the Court will also dismiss the federal claims against the remaining defendants and decline to exercise supplemental jurisdiction over Hussein's remaining state law claims against the remaining parties.

Based on his affidavit of indigence, on March 25, 2009, the Court granted Hussein's application to proceed IFP pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint.  This Court may dismiss, at any time, IFP actions that fail to state a claim or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  When deciding whether to do so, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

For the reasons more fully described in the paragraphs that follow, the Court has determined that all of Hussein's federal claims are ripe for dismissal on initial § 1915(e)(2)

15

review because they fail to state a claim on which relief may be granted.  The Court will dismiss the Title VII claims against all remaining defendants because, as described by the Court previously, a Title VII claim must be premised on an employment relationship, and none of the defendants here employed Hussein.  The Court will dismiss the § 1983 claims:  (1) against Mayor Healy because Hussein has failed to allege that Healy was personally involved in any deprivation of his rights; (2) against the Jersey City Police Department because it is not a properly named party under New Jersey law; (3) against the City of Jersey City because Hussein's allegations fail to meet the stringent standard for municipal liability required under § 1983 and because Hussein's failure-to-protect claim against the City is not legally cognizable; (4) against the Municipal Prosecutor because any allegations against that office do not relate to actions taken outside of the Municipal Prosecutor's judicial functions, and (5) against the Landlord Defendants because Hussein has not alleged that they were acting under color of state law. The Court will now discuss in greater detail its reason for dismissing the § 1983 claims against each defendant.

Healy is the Mayor of Jersey City, where Hussein resided.  The Court cannot discern the nature of Hussein's claims against Healy, since the Amended Complaint does not mention any personal involvement of Healy in any of the alleged constitutional deprivations he suffered.  The Court can only assume that Hussein is attempting to hold Healy liable for the actions of municipal employees whom Hussein alleges have wronged him.  However, liability under § 1983 cannot be predicated solely on the operation of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, a plaintiff must show a defendant's personal involvement, through "allegations of personal direction or actual knowledge and acquiescence." Id.  Thus, Hussein fails to state a claim against Healy under § 1983.

Hussein alleges that the Jersey City Police Department failed to protect him from Marrero. However, under New Jersey law, a municipal police department is not an entity separate from the municipality. See N.J. Stat. Ann. § 40A:14-118. Accordingly, the Jersey City Police Department is not a proper defendant in this action. See Adams v. City of Camden, 461 F. Supp. 2d 263, 265 (D.N.J. 2006).

Hussein alleges, pursuant to § 1983, that the City of Jersey City failed to protect him from Marrero. This claim must be dismissed because Hussein has not alleged any policy or custom that could form the basis for § 1983 liability against the City; and also because Hussein's failure-to-protect claim is not legally cognizable under either the Due Process Clause of the Fourteenth Amendment or the Equal Protection Clause. The Court will explain each of these reasons in turn.

In Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978), the United States Supreme Court determined that municipalities are "among those persons to whom § 1983 applies." However, "a municipality cannot be liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. (emphasis in original). Rather, the City can be held liable for any constitutional deprivations suffered by Hussein only if "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378 (1989).

 "[A] plaintiff seeking to impose liability on a municipality [must] identify a municipal policy or custom that caused the plaintiff's injury." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 402 (1997) (internal quotation marks omitted). "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be

17

said to be those of the municipality." Id. (citing Monell, 436 U.S. at 694). "Similarly, an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. A "custom, or usage," of a state for § 1983 purposes "must have the force of law by virtue of the persistent practices of state officials." Adickes v. S. H. Kress & Co., 398 U.S. 144, 167 (1970). Whether liability is premised on the existence of a policy or a custom, the municipality's liability can be predicated "only [upon] acts for which the municipality itself is actually responsible…." St. Louis v. Paprotnik, 485 U.S. 112, 123 (1988). "Only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." Id. (quoting Pembaur v. City of Cinncinnati, 475 U.S. 469, 483 (1986)). Hussein has not alleged that any particular decision, policy, or custom of the City caused an alleged deprivation of his rights. Therefore, the municipality cannot liable to him under § 1983.

Second, Hussein's claim against the City for failure to protect him from Marrero must also fail because it fails to state a claim on which relief may be granted, based on either a due process or equal protection theory.

"As a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process." Nicini v. Morra, 212 F.3d 798, 806-807 (3d Cir. 2000) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 202 (1989)). In DeShaney the Supreme Court held that a child who was beaten so severely by his father that he suffered permanent brain damage did not have a claim against the state agency for violation of his substantive due process rights by failing to remove him from his father's custody although agency personnel had reason to know of the abuse. More recently, in Town of Castle

Rock v. Gonzales, 545 U.S. 748 (2005), the Supreme Court held that a woman whose husband abducted and murdered her three children did not have a claim against the town for violation of her due process rights for failing to enforce the order of protection, when the police failed to respond to her repeated calls for help.  The Court held, "[i]n light of today's decision and that in DeShaney, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process clause, neither in its procedural nor its 'substantive' manifestations."  Id. at 768.  Although it appears that Hussein fell victim to Marrero's physical and personal attacks in various forms, the Court cannot grant him relief against the City based on its police officers' failure to arrest Marrero or otherwise protect Hussein; a Due Process constitutional claim based on the City's alleged failure to protect Hussein simply does not exist under these circumstances.

Additionally, Hussein cannot succeed on a state-created danger theory because he fails to allege any facts that would show that any City employee affirmatively exercised his or her authority in a way that rendered him more vulnerable to Marrero.  See Burella v. City of Philadelphia, 501 F.3d 134, 146 (3d Cir. 2007).

Finally, any equal protection claim against the City based on a failure to protect Hussein from Marrero must also fail because Hussein's complaint does not allege any facts giving rise to an inference that any police officer treated Hussein in a disparate fashion because of some improper or discriminatory motive.  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  The Supreme Court in DeShaney stated that a "State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."  489 U.S. at 200 n.5 (citing Yick Wo v. Hopkins, 118 U.S. 356 (1886)).  However, the

Amended Complaint does not contain any facts giving rise to an inference that any of the police officers who interacted with Hussein harbored a discriminatory intent towards him or treated him differently because of his race or national origin.  Rather, Hussein makes the bare assertion that he was discriminated without alleging any facts to support the allegation.  For all of those reasons, Hussein's failure-to-protect claim against the City must be dismissed.

Hussein's § 1983 claim against the Municipal Prosecutor must fail because Hussein has not alleged that the Municipal Prosecutor committed any wrongdoing that was not associated with a judicial proceeding.  The Amended Complaint does not allege that any actions by the Municipal Prosecutor occurred outside the role of advocate for the municipality.

Finally, Hussein's § 1983 claims against the Landlord Defendants must also be dismissed.  A prima facie case under § 1983 requires the plaintiff to demonstrate:  (1) a person deprived him of a federal right; and (2) the person who deprived him of a federal right acted under color of state or territorial law.  Hussein's § 1983 claims against the Landlord Defendants must fail because they are not state actors acting under color of state law, nor does the Amended Complaint allege sufficient facts to give rise to an inference that they conspired with state actors to deprive Hussein of his constitutional rights.

Title 28 U.S.C. 1367(c)(3) provides the Court with discretion to dismiss a claim supported only by supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction.  Here, the Court had original jurisdiction over Hussein's § 1983 and Title VII claims based on federal question jurisdiction, because § 1983 and Title VII arise under the Constitution and laws of the United States.  See 28 U.S.C. § 1331.  In light of the disposition of the aforementioned claims and parties, the Court will decline to exercise supplemental jurisdiction over Hussein's remaining state law claims against the remaining defendants for

20

assault and battery (Count Four); negligent, gross negligence, and negligence per se (Count

Five); and against the Landlord Defendants for negligent hiring and continued employment of

Marrero (Count Six).  Since the jurisdiction-conferring claims were eliminated before trial, the

underlying values to be considered under the supplemental jurisdiction doctrine—judicial

economy, convenience, fairness, and comity—point toward declining to exercise retention of

jurisdiction.  Therefore, Counts Four, Five and Six against the remaining defendants will also be

dismissed without prejudice.

## II.  CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss the Amended

Complaint is granted in its entirety.  Additionally, the federal claims against Mayor Healy, the

Jersey City Police Department, the City of Jersey City, the Municipal Prosecutor, and the

Landlord Defendants are dismissed for failure to state a claim on which relief may be granted,

pursuant to § 1915(e)(2).  Finally, the state law claims against those parties are dismissed

without prejudice because in light of the disposition of the Amended Complaint's federal claims,

the Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

The Court will enter an order implementing this opinion.

_____s/ Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 10, 2010